JAMES CHALCRAFT

*v.*

LOUISVILLE, EVANSVILLE AND ST. LOUIS RAILROAD COMPANY.

*Filed at Mt. Vernon January 22, 1885.*

1. APPEAL—*as to amount involved—whether applicable to suit for an injunction.* A bill for an injunction only, not being a suit to recover money or chattels, is not affected by the statute limiting appeals and writs of error in certain cases to $1000, and an appeal lies from the final judgment of the Appellate Court, in such case, to this court, without regard to the magnitude of the interests involved.

2. RAILROAD—*farm crossings—duty in respect thereto—securing the public safety.* The word "necessary," in the statute requiring railroad corporations to construct farm crossings "when and where the same may become necessary for the use of the proprietors of the lands adjoining such railroad," was used in its more popular sense, and is equivalent to the words, "reasonably convenient."

3. Where the erection and maintenance of a proposed farm crossing over a railroad track will directly affect the operation of the road as a means of public transportation, by seriously tending to increase the danger of collisions, this will be a sufficient reason why such crossing should not be made, and if attempted to be made by the land owner, he may be restrained from doing so, by injunction.

4. EMINENT DOMAIN—*measure of damages—farm crossings.* In the condemnation of land for a right of way for a railroad across a farm, the necessities and conveniences of location for farm crossings should be taken into consideration, and after the condemnation they will be presumed to have been considered, and that damages were estimated upon the hypothesis that a farm crossing would not be constructed and maintained at any particular point where it would directly and seriously affect the safe and efficient operation of the road.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Edwards county; the Hon. C. S. CONGER, Judge, presiding.

This was a bill in equity, to enjoin the construction of a bridge for a farm crossing over a railroad track. The track of the road of defendant in error runs across the land of plaintiff in error, cutting off from the main body, the barn,

stock-sheds, cribs, etc., and a tract of wood land.  The length of the railroad track through the land of plaintiff in error is twenty-three hundred feet, and there are over that part of the road, within convenient distances, two public crossings, five private or farm crossings for vehicles and cattle, and two foot crossings.  But plaintiff in error claims these do not sufficiently accommodate him, and having notified the railroad company to erect a bridge for him at a point indicated, and the company having refused, he was proceeding to erect it himself, when enjoined by this proceeding.  The Appellate Court rendered a decree reversing that of the circuit court, and making the injunction perpetual.

Mr. J. M. CAMPBELL, and Mr. WILLIAM F. FOSTER, for the plaintiff in error.

Mr. J. H. STRAWN, and Mr. C. H. PATTON, for the defendant in error.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

The motion to dismiss for want of jurisdiction to entertain this writ of error, must be overruled.  This is not a suit to recover money or chattels, and is not, therefore, affected by the statute limiting appeals and writs of error to $1000, and the writ hence lies, without regard to the magnitude of the interests involved.  *Baber* v. *Railroad Co.* 93 Ill. 342.

The statute provides that "every railroad corporation shall * * * erect and maintain fences on both sides of its road, * * * with gates or bars at the farm crossings of such railroad, which farm crossings shall be constructed by such corporation when and where the same may become necessary for the use of the proprietors of the lands adjoining such railroad," and authorizes the owner or occupant to do so if the railroad company, after notice, shall refuse.  If

the word "necessary," in this connection, should, according to its primary meaning, be considered as the equivalent of "indispensable" or "inevitable," it is quite clear the ruling of the Appellate Court is right, for the evidence shows that plaintiff in error can use all of his farm, and lands, and barns, and other buildings, etc., with the farm crossings that he already has, though probably not with the same facility and convenience that he could with the aid of this proposed crossing. Using the word, however, as we think we should, in its more popular sense, as equivalent to "reasonably convenient," and relying on the mere *opinions* of witnesses, without regard to the *facts* proved, as to whether the proposed crossing is, in that sense, "necessary," we should, doubtless, feel inclined to affirm the ruling of the circuit judge, since the number of witnesses expressing *opinions* in favor of the plaintiff in error is as great as that expressing *opinions* in favor of the defendant in error, and he had the advantage of seeing and hearing them testify. But the mere *opinions* of witnesses as to the necessity of this farm crossing, depending, as they do, much upon fancy and speculative theories, can not be controlling as against unquestioned repugnant facts. In giving construction to the statute, it is quite evident it could not have been intended the interests of the land owner or occupant are alone to be consulted, for the question also affects the interests of the railroad company and the public. It would not be reasonable to suppose that it was contemplated that a railroad company should be compelled to erect and maintain a crossing at a point where the expenses of so doing would be very greatly in excess of all benefits that could result therefrom to the land owner or occupant. Moreover, the rule is general that where a conflict arises between a mere private convenience on the one side and the public welfare on the other, and one must give way, the former must yield to the latter. The public welfare demands as high a degree of safety in the transportation of persons and property by railroad as is rea-

sonably attainable in view of the character and exigencies of that mode of transportation, and anything, therefore, which tends to directly and materially imperil the safety of such transportation, is so far inconsistent with the public welfare, and ought not to be allowed for the mere sake of a private convenience. It is here proved, and there is no conflict in the evidence in that regard, that the track of the railroad on the land of plaintiff in error is sharply curved to the south, with the center of the curve not far from the point of the proposed crossing; that at that point, and extending some small distance on each side, there is a cut, in which the top of the rail is eight feet below the natural surface; that the proposed bridge will have to be elevated so that its lowest part will be nineteen and one-half feet above the top of the rail; that to give this elevation, embankments must be erected on each side of the cut, above the natural surface, to the requisite height; that the unavoidable effect of such embankment, on the north side of the cut, will be to obstruct and exclude from those operating the trains, all view of the track for a considerable distance on each side of the proposed crossing; that the danger of collisions on this part of the road will be thereby inevitably much increased, and by necessary consequence the transportation rendered, very materially, more perilous to persons and property. In the condemnation of the right of way over this land, the necessities and conveniences of location for farm crossings should have been, and we must presume were, taken into consideration, and if so, the damages were estimated upon the hypothesis that a farm crossing would not be constructed and maintained at this point or at any other point where such crossing would directly and very materially affect the safe and efficient operation of the road.

This undisputed fact, that the erection and maintenance of the proposed crossing would directly affect the operation of the road as a means of public transportation, by seriously

tending to increase the danger of collisions, is, in our opinion, a conclusive reason why the crossing should not be constructed.

The decision of the Appellate Court is affirmed.

*Judgment affirmed.*