# William Smith, Appellee, v. B. F. Bush, Receiver of St. Louis, Iron Mountain & Southern Railway Company, Appellant.

1. MANDAMUS, § 1*—*nature of writ of.* The writ of mandamus is not a writ of right.

2. RAILROADS, § 278*—*when railroad company not compelled to erect overhead crossing to connect farms.* Where, on a petition for a writ of mandamus to compel a railroad company to erect an overhead crossing to connect two farms at a certain point, the undisputed evidence is that owing to the curve in the track and the height of the embankment at such point, such a crossing will constitute a danger to public travel and to persons crossing the track, the petition for the writ should be denied, especially where the benefits accruing from the crossing will not be proportionate to the increased danger.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

3. RAILROADS, § 267*—*what considered in determining question of compelling erection of farm crossing.* The existence of other places of crossing the track and the proportion between the cost to the railroad company and the benefit to the property owner are to be considered, in determining whether a railroad company will be required to erect a farm crossing at a particular point.

4. RAILROADS, § 267*—*when company not compelled to erect farm crossing.* A railroad company will not be compelled to erect a farm crossing where the property owner can avail himself of crossings at other points and the cost to the railroad company of erecting a safe crossing at the point will far exceed the benefits which will accrue to the property owner from the crossing.

5. RAILROADS, § 278*—*what presumption as to payment for inconvenience due to right of way considered in proceedings to compel erection of farm crossing.* Where a farm owner sold a right of way through his land to a railway company, it is presumed that allowance was made and paid at the time for inconvenience which might arise through the interference with passing from one part of the farm to the other, and this presumption, while not conclusive, will be considered on a subsequent petition by the property owner for a writ of mandamus to compel the railroad company to erect a farm crossing.

6. RAILROADS, § 267*—*what is nature of right to farm crossing and what considered in determining whether building granted.* The right to a farm crossing given by the statute (J. & A. ¶ 8811) is not absolute, but in determining whether or not the building of such a crossing will be granted, the court should take into consideration the danger to public travel, the expense of erecting the crossing, the necessity for a crossing and the benefits which will accrue from it.

Appeal from the Circuit Court of Randolph county; the Hon. LOUIS BERNREUTER, Judge, presiding. Heard in this court at the October term, 1917. Reversed and remanded. Opinion filed April 5, 1918.

L. O. WHITNEL, for appellant; EDWARD J. WHITE, J. FRED GILSTER and JOSIAH WHITNEL, of counsel.

WILLIAM M. SCHUWERK, for appellee.

MR. JUSTICE McBRIDE delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

The appellee in this proceeding sought and obtained a writ of mandamus requiring the appellant to build and construct a farm crossing over its railroad to be used by appellee in passing from his farm on the east to the west of the railroad. It appears from the record in this case that in 1902, and prior thereto, the appellee was the owner of 80 acres of land situated in Randolph county, Illinois, near the Okaw River. It is bottom land, some of it is susceptible of cultivation and other parts of it is low and swampy. In 1902 the appellant constructed its railroad through appellee's land, obtaining from appellee a deed for a right of way to a strip 250 feet wide, which amounted to 6 acres, and left the appellee owning about 74 acres, of which appellee says 10 acres were on the west side of the railroad, and the remainder of the farm (64 acres), with the improvements, was upon the east side of the railroad. The railroad extends through appellee's farm upon a curve, as appellant says, of one degree, twenty minutes. At the time of the building of the railroad through this bottom, the appellant erected an embankment extending all the way through appellee's land of from the height of 14 to 17 feet, and the width at the base is about 75 feet, and the length of the embankment through appellee's land is 1,062 feet. In constructing the road no crossing was left upon appellee's land, but there were two underhead crossings, as they are called by witnesses, left near the land, one of which was on adjoining land owned by McDonald and the other on land owned by Sheppel. These crossings have been used by appellee ever since the construction of the road, in obtaining access to his land lying on the west of the railroad, and he says, in speaking of getting from his land on the east to that on the west, ''I have been getting to it all these years, but I had trouble.'' It appears that the amount of land owned by the appellee upon the west side of the railroad is 10 acres, of which 5 and

a fraction acres are in cultivation and the rest of it is low, swampy, timberland, and some of the witnesses describe it as brushy. Appellee claims that at times when the river is up he is unable to get from his land on the east to that on the west because of the high water, and that he has lost two or three crops by reason of the high water and his inability to get to the land on the west. It appears from the testimony that this tract of land on the west of the railroad is of the value of from $60 to $100 per acre, and that which is in cultivation has a rental value of $5 per acre. It also appears from the evidence that to construct an overhead crossing at the place desired would cost about $1,100 and to construct an underhead crossing would cost from $2,500 to $3,000. It further appears that to construct an overhead crossing on this curve through appellee's land, or at the place desired, would be dangerous to persons passing over the crossing and those operating and riding upon the trains. Four passenger trains and a great number of freight trains pass daily over this railroad.

The principal contention of the appellant is that the court erred, under the evidence and circumstances shown in this case, in directing this crossing to be constructed. The statute under which it is sought to compel the construction of this crossing provides: "Farm crossings shall be constructed by such corporation when and where the same may become necessary, for the use of the proprietors of the lands adjoining such railroad." [J. & A. ¶ 8811.] It is contended by counsel for appellant that in determining when and where a crossing is necessary that the court should take into consideration all of the existing conditions, that is, the benefit to the persons seeking the crossing, the disadvantage, if any, to the corporation, together with the expense and other attending circumstances, and that the word "necessary" is equivalent to "reasonably convenient." *Chalcraft v. Louisville,*

*E. & St. L. R. Co.,* 113 Ill. 88. The writ of mandamus is not a writ of right. "Courts, in the exercise of wise judicial discretion, may, in view of the consequences attendant upon the issuing of a writ of mandamus, refuse the writ though the petitioner has a clear legal right for which mandamus is an appropriate remedy." *People v. Board Sup'rs Adams Co.,* 185 Ill. 293. Again the Supreme Court said: "It must be remembered that the writ of mandamus is not a writ of right, demandable by the State acting through its law officers, but its issue is discretionary with the court, acting upon existing facts, and viewing the whole case with due regard to the consequences of its action." *People v. Ketchum,* 72 Ill. 215. The undisputed testimony in this case is that to erect an overhead crossing, so as to connect these two farms, considering the curve and the height of the embankment, would be absolutely dangerous to public travel and to persons crossing the railroad, the reason given being that owing to the curve in the track persons coming upon the crossing could not observe the train until it was within a short distance of them, and that the engineer would not be able to see such persons. This was testified to by two of appellant's witnesses and not denied by any one, and we are not able to say that such testimony is not a true representation of the conditions that would exist if an overhead crossing was constructed. Our Supreme Court has said: "Moreover, the rule is general that where a conflict arises between a mere private convenience on the one side and the public welfare on the other, and one must give way, the former must yield to the latter. The public welfare demands as high a degree of safety in the transportation of persons and property by railroad as is reasonably attainable in view of the character and exigencies of that mode of transportation, and anything, therefore, which tends to directly and materially imperil the safety of such transportation is

so far inconsistent with the public welfare, and ought not to be allowed for the mere sake of a private convenience." *Chalcraft v. Louisville, E. & St. L. R. Co., supra*. The fact of the increased danger to the traveling public, as shown by this evidence, demands, in our judgment, a refusal by the court to construct an overhead crossing at this place. The benefits to be derived by appellee from such crossing are very meager compared with the hazards to public travel. It is said by counsel for appellee and shown by the evidence that an underhead crossing could be constructed that would not in any manner be dangerous or at all interfere with the public travel, and we think this is fully shown by the testimony, but it appears that to construct a crossing of this character would cost about $2,500. Appellee had only a fraction over 5 acres of land in cultivation upon the west side of the railroad that he was seeking access to and there were only 10 acres of land upon that side of the railroad, the remainder or greater portion of it was swampy and timbered, and some of the witnesses called it brushy, and the land in cultivation has, and has had, a rental value of $5 per acre, which would yield to the appellee a profit of about $25 a year. It also appears that he has been able since 1902 to raise crops upon this 5-acre tract and gather them, except for about 3 years, when, he says, the high water and his inability to get to them caused the damage to his crops. It is by no means clear from this testimony that the crops could have been saved even if a crossing had been there, as this is all bottom land, as we gather from the record, and subject at times to overflow. It is true that the testimony discloses that appellee has been able to raise crops upon this tract since 1902, which he admits, but says it has given him trouble to reach the land. There are two underhead crossings, one of which is called the McDonald and the other the Sheppel crossing, through which he has been able most of the time to

reach his land and cultivate the same. To construct either an overhead or underhead crossing would be very expensive to appellant and far more injurious to appellant than, in our judgment, the benefits that appellee could derive therefrom, and these are matters that must be taken into consideration in determining whether or not, under all the circumstances, the writ should issue. ''In giving construction to the statute, it is quite evident it could not have been intended the interests of the landowner or occupant are alone to be consulted, for the question also affects the interests of the railroad company and the public. It would not be reasonable to suppose that it was contemplated that a railroad company should be compelled to erect and maintain a crossing at a point where the expenses of so doing would be very greatly in excess of all benefits that could result therefrom to the landowner or occupant.'' *Chalcraft v. Louisville, E. & St. L. R. Co., supra.* In 1902 the appellee sold this right of way to the appellant and it then constructed this embankment, which he could not help but see and know was being done, and if he had desired, or thought he was entitled to, under the arrangement by which the right of way was procured, a crossing, he should then have made his wishes known to the railroad company, when an underhead crossing could have been constructed at much less expense than at present. It is presumed that at the time of the purchase of the property allowance was made and paid for the inconveniences that might arise, and while this is not conclusive, it is an element that may be considered. *Chicago & I. R. Co. v. Hopkins,* 90 Ill. 316. There has not been much, if any, change in the conditions existing there, except that appellant deepened and widened a ditch upon its right of way upon the complaint and at the request of appellee, and for the purpose of the better drainage of appellee's land, as testified to and not denied by appellee. So far as this

record discloses, appellee still has the right to pass
to his land upon the west side through the McDonald
or Sheppel crossings, as heretofore. It is said by
counsel for appellee that this is a right given him
under the statute, and that he is entitled to the en-
forcement of it according to the terms of the statute,
and, as we understand the argument, ignores the ques-
tion entirely of conditions, expense, or any other ele-
ment that enters into it, and reference is made to the
case of *Ohio & M. Ry. Co. v. People,* 121 Ill. 483. The
question involved in that case, however, was entirely
different from the one here, as there it appeared that
the railroad company was willing to build the fence,
but desired to harass the landowner by building it off of
the line and preventing him from connecting his fence
therewith. The Supreme Court said the railroad com-
pany could not do that, but we see nothing in that
decision that militates against the conclusion above
reached. He also refers to the case of *Shea v. Cleve-
land, C., C. & St. L. R. Co.,* 250 Ill. 97, as laying down
the doctrine of absolutely requiring the construction
of a farm crossing where the lands are divided by a
railroad. It will be observed that in that case there
was no question of hazard to public travel, no ques-
tion of expense, as the crossing only cost $67.40, and
there was in that case the element of reaching a sta-
tion upon an electric railroad, none of which elements
are involved in the consideration of this case. We do
not think that either of the cases referred to are con-
clusive of the matters at issue in this case.

The ninth proposition submitted by the appellant
to the court should have been "held," and the court
erred in not so doing. We are of the opinion that,
when the expense of erecting either an overhead or
underhead crossing, the dangers to public travel, the
small benefits that could accrue to the appellee if the
crossing was erected, the further fact that he is able
to cultivate his land, although it is somewhat incon-

venient, are all considered together, it would be an abuse of the judicial discretion vested in the courts to award a writ of mandamus under such circumstances and conditions, and that the court erred in awarding the writ in this case.

The judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*