Ernest F. Hagemann, Plaintiff-Appellant, v. Chicago Great Western Railway Company, Defendant-Appellee.

Gen. No. 10,714.

Opinion filed May 17, 1954. Released for publication June 4, 1954.

LAUGHLIN & LAUGHLIN, and KORF & KORF, all of Freeport, for appellant; EVERETT E. LAUGHLIN, and JOHN KORF, both of Freeport, of counsel.

WINSTON, STRAWN, BLACK & TOWNER, of Chicago, and BURRELL & HOLTAN, of Freeport, for appellee; BRYCE L. HAMILTON, GERARD E. GRASHORN, NEIL McKAY, all of Chicago, and RAMER B. HOLTAN, of Freeport, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.

Ernest F. Hagemann, filed his petition for a writ of mandamus in the circuit court of Stephenson county against the Chicago Great Western Railway Company. He alleged in his petition that he was the owner of a farm containing approximately 148.8 acres and had resided thereon since 1933; that the defendant was the owner of a railroad right-of-way 200 feet wide which intersected his land in such a way that it divided plaintiff's land into approximately 25 acres on the south side of defendant's right-of-way, and approximately 124 acres on the north side; that his land had a fair cash market value of $200 per acre; that his farm dwelling and all of his farm buildings were located on the 25 acres south of defendant's right-of-way; that section 53 of chapter 114 of the [1953] Illinois Revised Statutes [Jones Ill. Stats. Ann. 114.089] requires that railroad corporations build farm crossings where the same shall be necessary, and that section 56 of said Act [Ill. Rev. Stats. 1953, ch. 114, § 56; Jones Ill. Stats. Ann. 114.092] requires railroad corporations to keep said farm crossings in a proper state of repair; that the defendant has failed to keep the farm crossing separating plaintiff's land in such a condition as to be usable for ordinary farm operations; that over a period of years defendant has raised its tracks so that there is now a grade of approximately 16% from the south line of defendant's

right-of-way to the south line of its railroad tracks; that plaintiff, because of this steep grade, cannot use said crossing to transport his crops and machinery across defendant's right-of-way and that defendant had refused to construct, for the use of the plaintiff an underpass beneath its railroad tracks. The petition prayed for the issuance of a writ of mandamus commanding the defendant to do such acts as will make the farm crossing on plaintiff's land suitable for his use in carrying on normal and customary farm operations. The answer of the defendant denied that plaintiff was entitled to the relief sought.

By stipulation of the parties the following issue was submitted to a jury; "Is the farm crossing, as it now exists, reasonably sufficient for the reasonable and customary use and operation by the plaintiff as a farmer?" It was further stipulated that if that issue be determined in favor of the plaintiff, two issues then remained for determination by the court: (a) Whether a writ of mandamus should issue, and (b) if the writ shall issue what should the writ provide?

A jury trial was had and the jury answered the submitted interrogatory in the negative. Some additional evidence was then presented to the court upon the issues reserved for consideration by the court and the court entered an order awarding the plaintiff a writ of mandamus, expressly conditioned upon the plaintiff making available to the defendant, upon a reasonable and fair basis, a sufficient amount of land to enable the defendant to extend the existing crossing. The order further provided that if plaintiff failed to make available the required land upon a reasonable and fair basis within 45 days, that then the writ would be denied and the plaintiff's petition dismissed at his costs. The plaintiff elected not to make available to the defendant the land and refused to comply with said order and his petition was thereupon dismissed. From an appro-

priate order denying the writ and dismissing the petition plaintiff appeals.

A proper understanding of the case requires a statement of the facts concerning this farm and the location of the railroad crossing. The farm has a total acreage of 148.8 acres. The defendant's railroad intersects the farm in question in such a way as to divide it so that there are 25 acres of land located south of defendant's right-of-way and approximately 124 acres lying on the north side of the right-of-way. All of the buildings are located on the south side of the track and all of the land is in cultivation with the exception of about 14 acres of permanent pasture land on the north side of the track. The defendant's right-of-way is 200 feet wide and the railroad track is in the center of this right-of-way. The farm crossing in dispute had been a farm crossing for more than 60 years and in the same location. The defendant has, from time to time, raised the grade of its track so that now there is a 16% grade from the south line of defendant's right-of-way to the south side of its railroad track.

According to the evidence plaintiff's land is worth $190 per acre. Corn, wheat, oats, and alfalfa, are raised on this farm by the plaintiff. Normal farming operations require that plaintiff pass over this farm crossing several hundred times during the course of a year. Since 1950, because of the large and heavy farm equipment now in use plaintiff has not been able to use this crossing. Previous to that time, he could, with considerable difficulty, use the crossing with his horse and wagon equipment. The defendant last raised the grade of its tracks from 9 to 12 inches in 1950. The defendant's track rests on top of an embankment so that the land on either side of the track slopes down toward the fields of the plaintiff. After the plaintiff stopped using the farm crossing in 1950 he reached the fields north of the track by using two public crossings

on public roads which run along the south and west sides of his farm. This required him to travel a longer distance in order to reach his fields and also required him to cut across some of his fields because of creeks that run through a portion of his farm, and which had no permanent bridges across them.

The defendant introduced evidence showing that it was willing to buy from the plaintiff a strip of land 125 feet long and 50 feet wide, which was immediately adjacent to the south side of the farm crossing in dispute, and that it would construct on this tract of land which it was willing to purchase, an extension of the south approach and a roadway 16 feet wide which would have an 8% grade. The cost to the defendant to construct this extension, the evidence showed, would be $1,800 plus the amount it paid plaintiff for the use of said strip of land.

The evidence further shows that if an underpass was constructed under defendant's tracks, with a vertical clearance of 16 feet and a horizontal clearance of 13 feet, as plaintiff insists upon, it would cost $12,550 and that such an underpass would last about 25 years, at which time it would have a replacement cost, under present day prices, of $3,350 for a portion of it (the cribs, stringers, ties and guard rails), while the pilings would last about 40 years and could be replaced, under current prices, for $4,000.

In addition to the extension of the present crossing, or the building of an underpass, there was evidence that the construction of a road along one side of defendant's right-of-way would cost approximately $10,-000 and that such a road might accommodate plaintiff's farming operations, but other factors preclude the feasibility of building such a road and neither party has argued in favor of it on this appeal.

The plaintiff's theory is that the defendant has destroyed, by raising its track, an existing farm cross-

ing and that it is its statutory duty to provide the plaintiff with a usable farm crossing. The defendant's theory is that it would be unreasonable to compel it to construct a private underpass to replace the present farm crossing, and that the trial court exercised its discretion in refusing to award the writ when the plaintiff failed to make available to defendant at a reasonable price to be paid by defendant the necessary strip of land, as required by the conditional order.

 The general principles surrounding the issuance of a writ of mandamus are well stated in *People ex rel. Harrison v. Kelly,* 391 Ill. 136, where the court says: (p. 138) *"Mandamus* is not a writ of right but is to be awarded or refused in the exercise of judicial discretion. Such discretion, however, is not an arbitrary one, but must be exercised according to legal principles. Ordinarily, if a petitioner has a legal right, he is entitled to the writ, but the mere presence of the petitioner's right may not furnish a basis for its issuance. In the exercise of its discretion, the court looks to existing facts and views the whole case with due regard to the consequences of its action. (*People v. Ketchum,* 72 Ill. 212.) In *People ex rel. Stettauer v. Olsen,* 215 Ill. 620, it was said: 'When a writ of *mandamus* is asked the court may inquire whether it will operate impartially, create confusion and disorder, and whether it will or will not promote substantial justice. Courts, in the exercise of the discretion with which they are vested, may in view of the consequences attendant on the issuing of a writ of *mandamus,* refuse the writ, though the petitioner has a clear legal right for which *mandamus* is a proper remedy.' See, also, *Michigan-Grand Building Corp. v. Barrett,* 350 Ill. 291; *People ex rel. Lyle v. City of Chicago,* 360 Ill. 25."

 There is no absolute right to a farm crossing under sections 53, 56 and 57 of chapter 114 of the Illinois Revised Statutes [Jones Ill. Stats. Ann. 114.089,

114.092, 114.093], and in deciding whether a farm crossing should be ordered, a court must, of necessity, take into consideration the expense of the work, the danger to the public, the benefits to the landowner, and the necessity for the crossing. If there are other crossings nearby, by which fields are accessible to the landowner, although they are not as convenient as a crossing on his own land, this is also a matter to be considered in deciding whether or not a farm crossing should be provided by the railroad. (*Smith v. Bush*, 211 Ill. App. 83; *Chalcraft v. Louisville, E. & St. L. R. Co.*, 113 Ill. 86.)

██ In *People v. Cleveland, C. C. & St. L. Ry. Co.*, 147 Ill. App. 141 the court said: (p. 145) "It is not to be determined alone by the arbitrary or captious judgment of the corporation, on the one hand, nor that of the farmer or landowner on the other. In a proceeding to compel the company to provide a different crossing from that already constructed, it must be shown that a crossing is necessary within the meaning of the statute, that the one provided is not reasonably sufficient for the purpose, and that the crossing wanted is practicable, the interests of all parties being considered." The case of *Shea v. Cleveland, C. C. & St. L. Ry. Co.*, 250 Ill. 97, announces the same principles of law. From these cases and others it is clear that there are certain general factors which govern a court in determining whether or not a crossing is necessary and what type of crossing is required. These factors are, (a) the character and value of the land adjoining the railroad; (b) the benefit accruing to the landowner if the crossing were constructed; (c) possible increase of danger to the public from a construction of the crossing; and (d) the cost of the construction and its maintenance to the railroad.

██ In the light of the foregoing, a study of the evidence in this record leads us to the conclusion that it would be unreasonable to require the defendant to

408

expend at least $12,550 to construct an underpass as insisted upon by the plaintiff. This is especially true when we consider an almost equally desirable result can be accomplished by extending the present crossing 125 feet to the south with a 16-foot roadway, thus lowering the grade of this farm crossing from 16% to 8%. This would only cost approximately $1,800 plus the value of the land taken in order to extend the crossing, which would be about one-eighth of an acre for the use of which defendant would compensate plaintiff. The plaintiff does not contend that such an extension would not provide a reasonably suitable crossing. He merely takes the position that this possibility is not available because it would require that some of his land would be used in order to extend the crossing. Assuming an initial cost of an underpass to be $12,550, as the evidence shows, this sum would equal the approximate value of 66 acres of land, of the character of plaintiff's at $190 an acre. Two of the plaintiff's fields 49 acres of land on the north side of the railroad track, one in the southeast corner of the farm and one in the northwest corner of the farm, are cut off by creeks from the rest of the land and the evidence shows that these two fields can be reached by using the public roads.

We believe that the trial court was eminently right and fair resolving the difficulties involved in this situation on an equitable basis and that he properly balanced the equities involved in the light of the various factors mentioned above. If a crossing reasonably suitable to plaintiff's needs can be furnished for the approximate sum of $1,800, it seems inequitable to us for the plaintiff to take the position that he was entitled to an underpass costing, in the first instance, at least $12,550.

After carefully considering all of the facts and circumstances presented by this record, we are of the

409

opinion that the order entered by the trial court was a proper exercise of the trial court's discretion in such matters, and that the conditional order was in accordance with established principles of law and the manifest weight of the evidence. The order denying the writ is affirmed.

*Judgment order affirmed.*

Mr. Justice Anderson took no part in the consideration or determination of this case.