Lawrence Lenit, Petitioner-Appellant, and Hugh M. Matchett, Aggrieved Person-Appellant, v. Leo J. Powers, John P. Coghlan, and The Chicago Law Institute, Defendants-Appellees.

Gen. No. 53,040.

First District, Third Division.

June 19, 1969.

Rehearings denied April 2, 1970.

411

Thomas McManigal, Lawrence Lenit, and Hugh M. Matchett, pro se, of Chicago, appellants.

Spray, Price, Hough & Cushman, of Chicago (Robert S. Cushman and Benno P. Ludwig, of counsel), for appellees.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

A petition for a writ of mandamus was brought to compel the calling of an annual meeting of the membership of the Chicago Law Institute. The petition was dismissed and this appeal followed.

The petitioner, Lawrence Lenit, is a member of the Law Institute; another petitioner, William Hettleman—also a member of the institute—was dismissed from the cause early in the proceedings. The respondent, Chicago Law Institute, is a private corporation, created by a special act of the Illinois Legislature (Laws of Illinois, 1857, p 1186) which corporation operated and maintained a law library located on the 10th floor of the County Building—rent free. The respondents, Leo Powers and John Coghlan, were, at the time the petition was filed, the president and secretary respectively of the Law Institute.

On December 6, 1965, the Law Institute entered into an agreement to transfer the institute's law library and other assets to the County of Cook. The County planned to establish a free law library on the 29th floor of the Chicago Civic Center and the institute believed it could not compete with the County—even if the institute could find new, rent-free quarters.

On December 10, 1965, the Chicago Law Institute and two of its members filed a complaint for declaratory judgment: Chicago Law Institute v. County of Cook. The complaint designated as defendants the County, the Attorney General of Illinois and several individuals whom the respondents in the present action describe as "a representative number of members of the Chicago Law Institute, including some who were opposed to the relief which the plaintiffs requested." Two of the members named were the petitioners in the instant case, Lenit and Hettleman. The complaint stated that the Law Institute could not continue to operate in competition with the free law library proposed by Cook County. There-

fore, the plaintiffs requested that the Chancery Division of the Circuit Court, under the doctrine of cy pres, apply the assets of the Law Institute to a similar charitable use. Specifically, they asked approval of the agreement to transfer the institute's law library and other assets to the County to be used for the County's law library. They also asked for direction authorizing the institute and the County to execute the agreement.

After the suit was filed but before it reached a final decree, the following occurred: The 1966 annual meeting of the institute for the election of officers and managers directed by the bylaws of the institute to be held on the last Friday in January of each year was not held; the respondents and the other officers and managers elected at the January 1965 meeting continued in office. No meeting was called to preserve the status quo pending the disposition of the litigation seeking approval of the transfer of the assets of the institute. In March 1966, a meeting had yet to be held and the petitioners formally demanded that the acting officers and managers of the institute issue a call for one, but the demand was either refused or ignored.

Thereafter, in April 1966, the petitioners filed a petition for a writ of mandamus to compel the respondents to call the annual meeting of the institute. The respondents filed a motion to dismiss in May of 1966. The next month, pursuant to stipulation, the petitioner, Hettleman, was dismissed from the case.

On July 8, 1966, the remaining petitioner, Lenit, filed an amended petition. One week later, the respondents filed a petition for a temporary injunction. The respondents' petition stated that on July 13, 1966, the Circuit Court entered a final decree in the case of Chicago Law Institute v. County of Cook (hereafter this final decree will be referred to as the Circuit Court decree) which approved the agreement entered into between the County and the institute. The respondents asserted that

414

they intended to raise the Circuit Court decree as a defense to the amended petition for a writ of mandamus. The respondents also asserted that some members of the institute had called a special meeting to elect officers. They alleged that the special meeting would oust the Circuit Court of jurisdiction over the mandamus petition. They prayed for an injunction to restrain the members of the institute from holding any special meeting for any purpose whatsoever except an informal meeting to discuss the future of the institute, an appeal from the Circuit Court decree and to solicit funds to finance such an appeal. The temporary injunction was allowed.

The respondents presented their motion to dismiss the amended petition on July 25, 1966. They contended that no meeting should be held pending disposition of the appeal from the Circuit Court decree. Some members of the institute had filed notices of appeal to the Appellate Court from that decree. They did not make the notice of appeal a supersedeas, however, or file a supersedeas bond. The respondents contended that a meeting of the institute would interfere with the jurisdiction of the Appellate Court.

The attorney for the petitioner withdrew in June 1966. From that time, Lenit represented himself pro se. In October 1966 Hugh M. Matchett, a member of the institute, was permitted to file an appearance as additional counsel for him.

On December 20, 1966, the respondents filed an amended motion to dismiss the amended petition. It advised the court that the previous week the Appellate Court dismissed an appeal from the Circuit Court decree and also denied a petition for leave to file a late notice of appeal. It also said that all other appeals taken from the decree had been finally dismissed and that the time within which to take further appeals had expired. (In addition to the appeals to the Appellate Court, other appeals had been taken to the Illinois Supreme Court and a

415

separate action had been filed in the United States District Court. These had also been terminated at the time of the respondents' motion to dismiss.) The motion stated that the agreement between the institute and the County was in full force and effect, making moot the question of further adjournment of the institute's annual meeting in order to preserve the status quo. It declared the intention of the respondents to call a meeting of the institute at the earliest practicable time to report to the membership, file a current account and call for the election of officers. The motion was allowed January 12, 1967, and the amended petition was dismissed.

On February 10, 1967, the petitioner filed a motion to vacate the judgment of January 12th and to amend the previously amended petition. The motion referred to the respondents' intention, expressed in their motion to dismiss, to call a meeting at the earliest practicable time and alleged that 28 days had since passed and that neither the January 1966 meeting nor the now overdue January 1967 one had been called. The petitioner's motion demanded the issuance of a writ of mandamus to compel the calling of a meeting. On February 14, 1967, the court vacated the judgment, allowed the amendment of the amended petition and ordered the respondents to answer.

At this point, it should be noted that in January 1967 a motion to vacate the Appellate Court's dismissal of the appeal was filed and denied. In February 1967 the denial was appealed to the Illinois Supreme Court.

The petitioner filed his second amended petition on February 21, 1967, and on March 1st the respondents filed their answer. Thereafter, on August 9, 1967, the petitioner filed a motion for summary judgment. On August 16, 1967, the court entered a judgment for the respondents. In doing so, the court recognized the transfer of assets which had occurred sometime after August 22, 1966, the date the Circuit Court entered an order

approving the "physical transfer of the books of the Law Institute to the 29th floor of the Civic Center." The court said, "The right of the members of the Chicago Law Institute to hold an annual meeting has become abstract in that the corporation is in effect dissolved and has no assets and a meeting would serve no useful purpose." The court dismissed the second amended petition for a writ of mandamus and assessed costs against the petitioner.

The petitioner filed a notice of appeal to the Illinois Supreme Court. His attorney, Matchett, also filed a notice of appeal but for himself, not his client. Matchett's appeal identified himself as a "member in good standing of [the] Chicago Law Institute, an Illinois corporation, a person not a party of record prejudiced or aggrieved by the Judgment. . . ." He asked that his appeal be treated as an original action (see Ill Rev Stats 1967, c 110A, § 381) and prayed that the judgment of the Circuit Court be reversed without remandment and for a writ of mandamus directing the respondents to call the annual meetings for January 1966 and 1967. The appeals of Lenit and Matchett were consolidated and one brief was filed in the Supreme Court. As the basis of jurisdiction, they alleged that the failure of the institute to hold an annual meeting and elect new officers deprived the appellants, as members of the institute, of property rights—the rights of members to hold a meeting and to vote, and the interest of members in the assets of the corporation and their distribution in the event of dissolution—in violation of the 14th Amendment of the Federal Constitution and article II, sections 2 and 19, of the Illinois Constitution. The appellants further alleged that the ultimate issue in the case was whether an appeal then pending before the United States Supreme Court from the Circuit Court decree constituted a defense to the mandamus petition. The Illinois Supreme Court concluded that it did not have jurisdiction of the

417

case on direct appeal and transferred the case to this court.

Parenthetically, it is of interest to note the following: The United States Supreme Court on March 11, 1968, in a per curiam decision, dismissed the appeal before it for want of jurisdiction and then, treating the papers for appeal as a petition for a writ of certiorari, denied certiorari. Hettleman v. Chicago Law Institute, 390 US 338 (1968) rehearing denied 390 US 1036 (1968). This, however, did not end the litigation seeking approval of the agreement to transfer the assets of the institute to the County. On July 11, 1968, two members of the institute, Hettleman and Edmunds, filed a petition to vacate as null and void the decree of the Circuit Court. The petition was denied August 9, 1968, and a motion to vacate that order was denied August 19, 1968. This litigation is still in progress. A direct appeal has been taken to the Illinois Supreme Court from the denials of the motion to vacate.

In his second amended petition, Lenit had asked for a writ of mandamus to compel the calling of the January 1966 and 1967 meetings. In their brief in this court, Lenit and Matchett ask that these meetings be consolidated with the January 1968 meeting. They have not amended their brief to include the January 1969 meeting, the time for which has now also passed, but we will consider their appeal as if this had been done.

 The issue in this appeal is whether the court erred in refusing to issue a writ of mandamus. Mandamus is an extraordinary remedy. Daniels v. Cavner, 404 Ill 372, 88 NE2d 823 (1949); National Fire Ins. Co. of Hartford v. Municipal Court, 28 Ill App2d 401, 171 NE 2d 687 (1961). One seeking the writ must show a clear right to it. People ex rel. Adamowski v. Dougherty, 19 Ill 2d 393, 167 NE2d 181 (1960); People ex rel. National Bank of Austin v. County of Cook, 56 Ill App2d 436, 206 NE2d 441 (1965). Where the applicant shows a

clear legal right to the relief he seeks, the court cannot arbitrarily refuse it. People ex rel. McCormick v. Western Cold Storage Co., 287 Ill 612, 123 NE 43 (1919); People ex rel. Bradford Nat. Bank of Greenville v. School Directors of Dist. No. 62, Franklin County, 309 Ill App 242, 32 NE2d 1008 (1941). However, mandamus is not a writ of right. People ex rel. Cannella v. City of Chicago, 7 Ill2d 416, 131 NE2d 98 (1956); People ex rel. Aramburu v. City of Chicago, 73 Ill App2d 184, 219 NE2d 548 (1966). Despite the presence of a clear legal right for which mandamus is an appropriate remedy, the writ may be denied in the exercise of sound judicial discretion because of the consequences accompanying its issuance. People ex rel. Harrison v. Kelly, 391 Ill 136, 62 NE2d 705 (1945); Hagemann v. Chicago Great Western Ry. Co., 2 Ill App2d 401, 119 NE2d 523 (1954). The writ may be denied where it will cause confusion and disorder or fail to operate impartially or promote substantial justice. People ex rel. Baird & Warner, Inc. v. Lindheimer, 370 Ill 424, 19 NE2d 336 (1939); People ex rel. Lyle v. City of Chicago, 360 Ill 25, 195 NE 451 (1935). It may also be disallowed where the issuance will be a fruitless or unavailing act (People ex rel. Cassidy v. Fisher, 372 Ill 146, 22 NE2d 937 (1939); Thornton v. Ramsey, 24 Ill App2d 452, 165 NE2d 65 (1959)), serve no useful or beneficial purpose (People ex rel. Town of Cicero v. Sweitzer, 339 Ill 28, 170 NE 728 (1930); Parrish v. Miller, 336 Ill 630, 168 NE 671 (1929)) or where it will directly affect another judicial proceeding then pending (People ex rel. Harrison v. Kelly, supra; People ex rel. Staats-Zeitung Co. v. Common Council of City of Chicago, 53 Ill 424 (1870)).

The appellants contend that where a clear legal right to the writ is shown, the court must grant the petition. Some of their authorities (e. g. People ex rel. Jonas v. Schlaeger, 381 Ill 146, 45 NE2d 30 (1942); People ex rel. Blome v. Nudelman, 373 Ill 220, 25 NE2d 811 (1940); Dorris v. Johnson, 363 Ill 236, 2 NE2d 74 (1936); Illinois

Cent. R. Co. v. People, 143 Ill 434, 33 NE 173 (1892))
support their position, but the weight of authority does
not. The weight of authority holds that even where a
clear legal right to the writ is shown, the court, in view
of the consequences attendant to its issuance may still
deny it. E. g., People ex rel. Stettauer v. Olsen, 215 Ill
620, 74 NE 785 (1905) ; People ex rel. Harrison v. Kelly,
supra; People ex rel. McCormick v. Western Cold Stor-
age Co., supra; Hagemann v. Chicago Great Western Ry.
Co., supra; People ex rel. Bradford Nat. Bank of Green-
ville v. School Directors of Dist. No. 62, Franklin County,
supra.

▮ In this case, the petitioner had, and the appel-
lants have, a clear legal right to the issuance of a writ
of mandamus because:

(1) The bylaws of the institute provide for an annual
meeting for the election of officers and managers and
to conduct other business. Section 12 of the bylaws, as
amended January 29, 1955, states:

> "There shall be an annual meeting of the Institute
> for the election of officers and managers, and the
> transaction of such other business as shall come
> before it, on the last Friday in the month of Jan-
> uary of each year at 3:00 o'clock in the afternoon
> at the Institute rooms, unless otherwise ordered by
> the Executive Committee. . . ."

(2) The petitioner-appellant, Lenit, and the appel-
lant, Matchett, are members in good standing of the in-
stitute. According to section 12 of the bylaws, such
members and only such have the right to vote.

(3) The corporation is still in existence. At the time
of the original petition for the writ, the agreement to
transfer its assets had been entered but not approved
by the courts. At the time of the denial of the writ, it
was judicially approved and the assets transferred, but

even today the litigation continues and the corporation has not been dissolved.

(4) At the time of the first petition for a writ of mandamus, despite the litigation in process seeking approval of the agreement to transfer, and at the time of the dismissal of the second amended petition—which occurred after the Circuit Court decree approving the agreement to transfer and after the transfer itself—there was legitimate business to be conducted at a meeting. For example, the old officers could have filed the annual report or reports. The members could have reelected the incumbent officers or elected new ones and directed them to support or oppose in the Circuit Court or on appeal the litigation seeking approval of the agreement to transfer. The officers could also have been directed to prepare to reinstate the library or dissolve the institute or to discuss the future of the institute in anticipation of the termination of that litigation. Today there is still much of the same business to be conducted.

(5) The bylaws of the Law Institute do not permit an indefinite postponement or omission of the annual meeting. One bylaw (section 12) does provide for a failure to hold the annual meeting upon the order of the Executive Committee and another (section 3) provides for the continuation in office of the officers and managers until their successors are elected but these bylaws permit only temporary postponements of a meeting. They do not afford the incumbent officeholders the privilege of extending their terms indefinitely. See 5 Fletcher, Cyclopedia Corporations, c 13, § 2001 (perm ed, rev vol 1967).

▮▮▮▮▮ Where a corporation is not dissolved, there is legitimate business for shareholders to conduct at an annual meeting. This is true even where the corporation is in receivership. Butler v. Beach, 82 Conn 417, 74 A 748 (1909); Lehigh Coal & Navigation Co. v. Central

421

R. Co. of New Jersey, 35 NJ Eq 349 (1882); State v. Merchant, 37 Ohio St 251 (1881). The right to vote and act in corporate matters is a valuable right, which cannot be taken away by the act or failure to act of the corporate officers. Albert E. Touchet, Inc. v. Touchet, 264 Mass 499, 163 NE 184 (1928); see also Trustees of Dartmouth College v. Woodward, 4 Wheat 518 (1819) (Story, J., concurring). Mandamus is a proper remedy to compel the calling of an annual meeting and election. 55 CJS, Mandamus, § 221; see e. g., People ex rel. Fleming v. Hart, 11 NYS 673 (1890); People ex rel. Maclaury v. Hart, 11 NYS 670 (1890).

However, despite a clear right to a writ of mandamus, the court, in view of the consequences accompanying its issuance, did not abuse its discretion in denying the petition. A meeting was not necessary to promote substantial justice; the occurrences at a meeting might have directly interfered with another judicial proceeding then pending and there might have been confusion and disorder.

An annual meeting was not necessary to promote substantial justice because the primary purpose of the petitioner in demanding one—to oppose the agreement to transfer—could have been accomplished through opposition to the declaratory judgment action seeking approval of the agreement. Hettleman, the petitioner who later withdrew, Lenit, the petitioner-appellant and Matchett, an appellant, had an opportunity to contest the agreement in the declaratory judgment action. Hettleman and Lenit were parties to the chancery proceeding which at the time of the filing of the original petition for the writ was before the Circuit Court but had not been decided. We do not know whether the appellant, Matchett, was a party or not, but as a member of the Law Institute he had a right to intervene. See Ill Rev Stats 1965, c 110, § 26.1. In addition, if the allegation of the respondents in this case is correct (and Matchett has not challenged

it), Matchett's interest in the chancery suit was protected by naming as defendants a representative number of members of the institute, including some who were opposed to the transfer. Any objection which the petitioners or appellants had to the transfer could have been raised in the declaratory judgment action for the purpose of that action was to determine the validity of the agreement.

The occurrences at a meeting might have directly interfered with the decree of the Circuit Court approving the agreement. For example, at a meeting, the appellants declared that the members of the institute could ratify or reject the agreement and could support the old officers or elect new ones and make the holdovers account for their dereliction of duty in entering the agreement. The necessity of a vote of ratification and the propriety of the officers' actions in entering the agreement were questions which were or could have been determined in the chancery suit. Furthermore, at a meeting, the appellants indicated that the members could reelect the old officers or elect new ones who would repudiate the agreement and take steps to recover the transferred assets. The new officers, though, could not rightfully act in conflict with the court-approved transfer. Their only recourse would be to appeal the decree approving it.

A meeting might have resulted in confusion and disorder. With the outcome of the transfer-litigation unresolved, the officers of the corporation would not have known where to proceed. They could not have dissolved the corporation because the litigation was not settled; they could not have repudiated the agreement to transfer and taken back the assets because the appeal from the order approving it was not yet successful.

Moreover, some of the appellants' declared purposes of an annual meeting would have been fruitless and unavailing. An annual assessment would have been pointless for a library which had given away all its assets; an

423

annual report would have been of minimal interest for a library which had ceased to operate.

There was legitimate business to be conducted at an annual meeting but this business was not so essential to the interests of the corporation or its members as to require that a meeting be held despite the consequences that would ensue. An election of officers could have been held and the officers directed to prosecute or defend appeals from the decree approving the transfer, although this was not essential to the representation of the interests of the corporation or its members in that litigation. An annual report detailing the agreement to transfer and the actions taken to effect it could have been presented, but much of this information was available in the record of the chancery suit. Preparations for the reinstatement of the library or dissolution of the corporation could have been made but also could have awaited the termination of the litigation.

 Thus, at the time the second amended petition for a writ of mandamus was denied, the ordering of a meeting was not essential to the interest of justice while good reason militated against it. The court did not abuse its discretion in refusing to issue the writ. Today there is even less reason to order the calling of a meeting. The litigation seeking approval of the transfer is closer to termination. Appeals all the way to the United States Supreme Court have failed to upset the decree which approved the transfer and a motion to vacate the decree has twice been denied. No useful purpose would be served by holding a meeting at this point. Chaos and confusion could well result, including duplication of what could and would be accomplished at a meeting following the finality of the litigation of the agreement to transfer. When that litigation is settled, the future of the Law Institute will be clear. Then a meeting of the institute can be held.

No claim has been made that a meeting will not be held at the completion of the litigation of the agreement. All

424

along the respondents have declared such an' intention. Their failure to call a meeting in January 1967 when they said they would do so is explained by the continuation of the appeals from the Circuit Court decree, the motion to vacate the order of the Appellate Court, its denial and the appeal to the Illinois Supreme Court.

The judgment of the Circuit Court will be affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.