The Illinois River Railroad Company, Plaintiff in Error, *v.* Henry Zimmer, Defendant in Error.

The Same, Plaintiff in Error, *v.* John W. Casey, Defendant in Error. *

### ERROR TO TAZEWELL.

Although a railroad charter requires that each subscriber shall pay ten per cent. at the time of his subscription, on a suit against a subscriber to enforce payment of a subscription, it need not be averred in the declaration that such per centage was paid.  Such fact is a matter of averment in defense.

The fact of non-payment of such per centage would not relieve the subscriber from liability.

An act of incorporation may be amended by the legislature, and if the amendment is accepted by the directors, the stockholders under the original act, unless otherwise stated, will be held liable.  The only question for consideration, is, whether the value of the stock as an investment will probably be benefited thereby.

An acceptance of an amendment to a charter may be manifested, by the stockholders, by the managers of the company, or by user of and action under such amendments.

These were actions of assumpsit brought by the Illinois River Railroad Company, at the January term of the Tazewell County Court, 1858, to recover sums of money of defendants as subscribers to the capital stock of said company.

The plaintiff sets out in its declaration, that on the 11th day of February, 1853, the legislature of Illinois incorporated the said company for the purpose of building a railroad from Jacksonville, in Morgan county, to La Salle, in La Salle county, which was approved by the Governor the same day, and became a law of the State of Illinois; also, that afterwards, to wit: on the 1st March, 1854, the legislature passed another law, amendatory to the above law, which was approved the same day, and became a law; and afterwards, on the 29th January, 1857, the legislature passed another law, entitled, "An Act to amend an act to amend the charter of the Illinois River Railroad Company," which was approved January 29th, 1857, and became a law; and afterwards, on the 16th day of February, 1857, the legislature passed an additional act, entitled, "An Act to amend an act entitled an act to construct a railroad from Jacksonville, in Morgan county, to La Salle, in La Salle county, which last act was approved 16th February, 1857, of which several acts the declaration makes profert, and avers that the several acts were in force at that time, and that there having been sufficient amount of the capital stock of said railroad company subscribed, according to the provisions of said charter, on the

---

* These cases were heard at Ottawa, April Term, 1858.

6th day of September, 1856, the said company became duly organized under the provisions of the several acts first above mentioned, by the stockholders electing the officers, etc., and that the defendant assented to the said organization; and that the defendant, on the 13th November, 1856, for the purpose of constructing said railroad, among others, subscribed to the following agreement, to wit: "Know all men by these presents, that we, the undersigned, do hereby subscribe the number of shares of the capital stock of the Illinois River Railroad Company, hereinafter set opposite our names respectively, and in consideration of our mutual subscription to said company, for the purpose of building said road, and of the premises herein, do severally agree to pay to the said Illinois River Railroad Company the amount of capital stock hereinafter subscribed by us and set opposite our names, and pay all demands to the said company when called for, according to law, by said company." Dated Pekin, November 13th, 1856. And the said plaintiff avers that the defendant subscribed his name for ten shares, amounting to $1,000, and that the company accepted his subscription, by means of which he became liable to pay plaintiff according to the terms of said subscription, and that at the meeting of the directors of said company, at Jacksonville, on 2nd December, 1857, the directors passed an order requiring that subscribers who resided in Tazewell county, or whose subscriptions were made payable there, should pay on the 1st January, 1858, $65 per share on each and every share so subscribed, and they should on the 1st Monday in each month thereafter, pay $5 on each share, until all was paid, and that the payment should be made to Joshua Wagenseller, or B. S. Prettyman, and that they should give twenty days' notice of time and place where such payments were to be made, by publication in some newspaper published in Pekin. The plaintiff avers notice, by publication, as required by the last made order. Plaintiff avers that on the 1st day of January, 1857, the said defendant paid to the said plaintiff, on said subscription, two installments on said subscription, to wit: $10 on each share, and also avers that the defendant made his subscriptions in Tazewell county, and that Wagenseller and Prettyman attended at the time and place given in said notice, to receive payment; plaintiff avers that by reason of the premises the defendant became liable to pay the sum of $650, or $65 on each share so subscribed, to which declaration was added the common counts; the plaintiff also files a copy of account sued on.

The defendants pleaded the general issue to all but the first count.

To the first count the defendant demurs, and assigns for cause of demurrer,

1st. There is no allegation in the declaration that the defendant paid ten per cent. on his subscription.

2nd. It does not appear that the $1,000,000 has ever been subscribed to the capital stock.

3rd. It does not appear in the declaration, that the call on which the suit was brought was general upon all the stockholders, but it appears the call was partial and only upon part of the subscribers.

4th. It appears from the declaration and the laws therein referred to, that the plaintiff has procured and adopted such amendment to its charter as will enable the plaintiff to build any and any such part of the railroad and run the same, as the plaintiff may see fit, and leave the plaintiff under no obligation to ever finish and complete said road from Jacksonville to La Salle, and authorizing the plaintiff to finish and complete any portion of said road on the route which may be laid off as a division, and abandon any other part of said road.

5th. It appears from the declaration and the laws therein referred to, that said company has procured such an amendment of its charter as allows the company to take subscriptions to stock, on any credit that may be contracted for, and payable in property, labor or any other thing, thereby enabling said company to sell its stock upon terms much more favorable to new than old subscribers, and because the declaration and the laws referred to therein, show that the said company have procured and adopted an amendment to the charter of the company, by which subscribers are required to pay calls named by said company on a notice of twenty days, instead of a notice of ninety days, as the charter provided when the defendant subscribed, and that the said declaration is in other respects informal and insufficient.

The court entered the following judgment: And now again come the parties, and the court having fully considered the special demurrer to the declaration, and having been fully advised in the premises, it is ordered that the demurrer be sustained for the special causes, No. 3 and 4; thereupon the plaintiff asked and obtained leave to amend its declaration, which being done, adding the averment of the payment of ten per cent. on each share subscribed by the defendants, and afterwards, and the cause being again submitted to court, the court rendered judgment for costs against said plaintiff; to all which orders and judgment the plaintiff excepted.

The pleadings in each case were similar, except showing that one of the defendants subscribed for two and the other for ten shares of stock.

W. THOMAS, N. H. PURPLE, and B. S. PRETTYMAN, for Plaintiff in Error.

DAVISON & PARKER, for Defendants in Error.

CATON, C. J.   The first question which we shall consider upon these demurrers, is that which is raised by the objection that the declarations do not aver that the defendants, at the time they made their subscriptions, paid in the ten per cent. as required by the first amendment to the charter which was in force at the time the subscriptions were made.   Admitting that in order to make the subscriptions obligatory on the defendants, it was necessary that they should have paid the ten per cent. at the time of subscribing, we are of the opinion it was not necessary to aver that fact in the declaration.   The liability arises, *prima facie*, upon the subscriptions, and if any fact exists which may defeat that liability, the defendants should plead that fact in defense.   But waiving this question of pleading, we are clearly of opinion that the mere fact of the non-payment of the ten per cent. at the time of subscription would not render it void.   If the commissioners, at the time the subscriptions were made, saw fit to give time upon the part which should have been paid down, they could not, for that reason, be permitted to refuse to the defendants the stock, when they should pay it in obedience to the call of the company for it.   If the company violated its strict duty in giving them time on the first payment, they could not be allowed to take advantage of that wrong and refuse the subscribers the benefit of the stock, when they should offer to pay for it.   So, on the other hand, the defendants cannot be allowed to take advantage of the indulgence extended to them when they made their subscriptions, for the purpose of repudiating them.   This indulgence is a most ungracious defense, which should not be allowed, unless it is strictly required by some inflexible rule of law.   Good faith to other subscribers, who may have been induced to take stock on the strength of these very subscriptions, requires that the defendants shall go on with them in the execution of the enterprise.   Good faith to the creditors of the company, who had a right to look to the list of subscribers, to determine whether the company was worthy of credit, imperiously demands that those, who by their subscriptions induced the credit, shall be compelled to contribute to the fund from which they are to receive their 'pay. *Wight* v. *Shelby Railroad Company*, 16 B. Monroe, 5 ; *Vermont Central Railroad Company* v. *Clayes*, 21 Vermont R. 30.

The other questions raised by the demurrer all depend upon the right of the legislature to pass the amendments of 1857,

and whether those amendments have been adopted by the company and have become a part of its charter.

We shall first examine the several objections to the provisions of these amendments as they are supposed to affect the individual stockholders.

At the time the defendant subscribed for the two shares of the capital stock of the company, the charter required ninety days' notice to be given of calls for payment on the subscription, before the same could be made payable. By the amendment of the charter, a notice of but twenty days was required. This, it is insisted, is a change of the terms of the contract, which could not be made without the express individual consent of the defendant. The language of the subscription is this: "Know all men by these presents, that we, the undersigned, do hereby subscribe the number of shares of the capital stock of the Illinois River Railroad Company, hereinafter set opposite our names respectively, and in consideration of our mutual subscription to said company, for the purpose of building said road, and of the premises herein, do severally agree to pay to the said Illinois River Railroad Company the amount of capital stock hereinafter subscribed by us, and set opposite our names, and pay all demands to the said company, when called for according to law, by said company." It will be seen that by the terms of this subscription, it is not in terms made payable upon calls with notice of ninety days, but the subscribers agree to pay "when called for according to law, by said company." When this subscription was made, the defendant knew that the charter of the company was not unalterable. He knew that it might be amended by the legislature, and that the company might accept such amendment, when that would become the law of the company; and he agreed to pay the money when called for, in pursuance of such law. If the ninety days' notice were deemed essential, and designed to be made a condition precedent to a legal liability to pay the money, it should have been inserted in express terms in the agreement of subscription, when the condition precedent would have to be performed before the liability would become complete.

There is in this case the same implied reservation of the right to change the law, and thus vary the precise extent of the liability, that there is in case of official bonds given by public officers and their sureties, conditioned that they shall faithfully perform the duties of their office according to law. In that case it is well settled that new or additional duties may be imposed upon the officer, so as they are germain to the office, and the sureties are bound for his faithful performance of those new duties, although the extent of their liability is thereby increased

beyond what it was when they executed the bond ; and this too, notwithstanding the great strictness which is usually observed in favor of sureties. *Governor* v. *Ridgway*, 12 Ill. R. 14 ; *Bartlett* v. *The Governor*, 2 Bibb R. 586.

This is not one of those cases where the provisions of the law are by implication incorporated into the contract, and constitute a part of it, unless we also introduce into the contract by implication, that other principle of law by which the right to the legislature and the company is reserved to change the provisions of the charter, as the public good and the interests of the company at large may require. And this principle disposes substantially of all the other objections which grow out of the amended charter, for all that is complained of was authorized by these amendments. Even admitting that but for the amended charter, it was necessary to aver that one million of dollars should have been subscribed before an organization was authorized, the first amendment of 1857 recognizes the company as a legally existing corporation, and cured any defect of that character. And, surely, there was no implied condition in the contract of subscription, that no organization should take place, with the sanction of the legislature, upon a less subscription than was originally required.

The objection that by the amendments to the charter, the company was authorized to build the road in sections, and not build it at all upon a part of the original route, has been fully disposed of by the decision of this court in the case of *Sprague* v. *Illinois River Railroad Company*, 19 Ill. R. 174.

It is also objected that the call is not general upon all the subscribers to the stock, but is confined to subscribers in Tazewell county. This was expressly authorized by the first amendment of 1857, when, as was the case here, the money was to be devoted to the construction of that portion of the road which lies in that county. We are not prepared to say that this is beyond the legislative power to permit. That this provision was for the public good, is demonstrated by the passage of the amendment, and that it was promotive of the interests of the company at large, is to be inferred from the fact that it has been adopted by the company ; and we may well imagine a state of things where justice to these very defendants, as well as all other subscribers, required that the money which they should pay on these subscriptions should, in good faith, be exclusively devoted to the construction of the road in the vicinage of the subscribers.

And so of the authority granted by the amendment to the charter, to take subscriptions, and receive payment therefor upon different, and, it may be, more advantageous terms than those upon which the original subscriptions were taken. It

is not difficult to suppose a case where such a course was indispensable to save what had already been expended in the prosecution of the enterprise. If that was the only means, or the best means, by which money could be raised to complete the road, and thus make available what had already been done, no one will doubt that it was for the common good of all that it should be done. It is no new thing in business affairs that sacrifices have to be made to save an inadequate investment from a total loss. Suppose in the same state of case, the legislature had authorized the company to issue bonds, convertible, at the will of the holder, into stock, and to sell them at ninety cents on the dollar, or even unconvertible bonds, the same hardship would have been done to the original subscribers, and yet a transaction so familiar as that would be questioned by no one. In either case, those who come in at the last to help out an embarrassed concern, have the advantage of those who came in at first, while the first subscribers might have had the advantage of the last had the enterprise promised so well that the stock had commanded a premium. The first who engage in such an enterprise are entitled to the chances of a rise, and must take the chances of a fall.

Although the fifth special cause assigned in the demurrer admits that these amendments to the charter have been adopted by the company, it has been urged against the declaration that it does not aver that fact, and in fine, it has been insisted that no amendment, which could affect any individual shareholder injuriously, could be adopted by the company, so as to be binding on him, without his consent, and this suggestion requires a moment's consideration.

As was said in the case of *Sprague* above referred to, the law will not admit the idea that any one acquires an interest, or subscribes for stock in an incorporated company, from any ulterior considerations, or in view of any incidental advantages beyond the value of the stock as an investment. Every shareholder must look for the promotion of his individual interest to the advancement of the general interest of the concern; and whatever advances that general interest, must necessarily be held to be a promotion of his interest. Each shareholder has a right to expect the cordial co-operation of all his co-shareholders in everything which tends to promote that general good. No one should be permitted to turn traitor to the concern, and set up an individual interest as hostile to it. No one can be known in the concern except by the stock which he represents, and all must be presumed to have a single eye to the enhancement of the value of that stock. These are general considerations which must be ever borne in mind in considering of amend-

ments to charters of incorporations. If an amendment is promotive of the general interest of the company, it is necessarily promotive of the individual interest of each shareholder, to the extent of his shares in the company; and any company has an undoubted right to accept any amendment to its charter which it believes promotive of the objects and interests of the company. Of this the company is necessarily the judge, and those who represent and act for the company, so long as they act with an honest purpose and a *bona fide* intent, must be held to have acted for the best, or at least their action must be sustained, as obligatory upon the company, the same as in the exercise of any other discretionary power with which they are vested, although it may turn out that they may have erred in their judgment. They are no more likely to err in this than in the exercise of any other important power with which they are invested.

There are various modes by which amendments to charters may be accepted by corporations, or rather by which such acceptance may be established, either for or against the corporation. The first, and perhaps the most satisfactory, is where an amendment is asked for in a general meeting of the shareholders, or where an amendment, after it is passed, is accepted by a majority in interest at such a meeting. But this is not the only, nor indeed the most usual mode, in this country of accepting amendments to corporate charters. This is generally done by the board of directors, who are for the most part vested with all the corporate powers of the company. We know of no case where it has been questioned that the board of directors have power to accept an amended charter, while that power has been expressly asserted in at least two different cases by this court. *Barret* (reported *Banit*) v. *The Alton & Sangamon Railroad Company*, 13 Ill. R. 508, and *Sprague* v. *The Illinois River Railroad Company*, 19 Ill. R. 174. Indeed, upon examination, it would probably be found that not one in twenty of the amended or even original charters under which corporations in this State are now exercising their franchises, has ever been accepted by a formal vote of the stockholders at large, and probably a majority have never been adopted by a formal vote even of the board of directors, but have been accepted by user alone, which is another and the most common mode of accepting an original charter by the corporators, and even of amendments thereto, both of which stand upon precisely the same footing in point of law. In neither case does the act of incorporation become the law of the corporators, prescribing the extent of their rights and the measure of their liabilities, till they have accepted its benefits and consented to

be bound by its liabilities. If they claim the one, they must submit to the other. This is an acceptance of a charter or an amendment thereto, and may be done by user. We may illustrate this by referring to our general statute, providing for a mode of condemning the right of way for public works, which statute also imposes certain obligations upon companies constructing such works. Suppose a railroad company already in existence at the passage of this general law, proceed to condemn land for its road way, it would thereby adopt such portions of that law as are applicable to it, and subject itself to the burdens therein imposed; while, if it refrained from availing itself of the benefits of the law, it might in no way be subjected to its provisions. We shall refer to but one case to show the application of this rule of accepting an amendment of a charter by implication or user. It is that of *The Lincoln and Kennebeck Bank* v. *Richardson*, 1 Greenl. R. 79. There the defendant was sued by the bank on a stock note, and was a stockholder in the bank, making the case precisely like this in every substantial feature. The action was not brought till the charter of the bank had expired, but its existence had been revived and continued by an act amendatory of the charter. It was admitted on all hands that the amendment was inoperative till it was accepted by the corporation, and there was no evidence of such acceptance except the bringing of the action. The court said: "By bringing the present action the plaintiffs have declared their acceptance of the new powers granted by the extending or revivor act of December 14, 1816, and of course are liable to be sued by their creditors as well as empowered to enforce payment by their debtors. It would be a harsh and unjust principle which would compel them to pay their debts because they have accepted the new powers, and yet deny them the use of legal process to enable them to collect the funds necessary for the purpose. If it should be urged, as it has been, that there is no assent on the part of the debtors of the bank of the extension of the charter, and that the bringing of this suit, though it may be proof of acceptance on the part of the bank, is not so on the part of Richardson, it may be replied, in addition to what has been before observed, that it appears by the agreement of the parties that the note in suit is a stock note, and of course Richardson is a stockholder. He is then bound by the act of acceptance on the part of the directors, the prosecutors of this action. The stockholders are bound by their official acts within the limits of their ordinary duties." It would be difficult to find a case more precisely in point in all respects to the one before us, than this is, unless it be that of *Foster* v. *The Essex Bank*, 16 Mass. R. 245. We deem it un-

necessary to enlarge upon a point so well settled.    Exceptional cases may no doubt be found, where a majority of the shareholders in number and interest have denounced and opposed an amendment so soon as they learn of its enactment, and the acts of user are limited and equivocal, as in the case of *Commonwealth ex rel.* v. *Cullen,* 13 Pa. State R. 133.    But the general rule is as stated above, that acts of user under an amendment to a corporate charter, for which no authority can be found except in such amendment, and which amendment is supposed in good faith to be beneficial to the corporation, are evidence of an acceptance of such amendment by the corporation, and make it the law of the corporation and binding upon all its members. If the act of acceptance by the board of directors or other controlling power, is prompted by sinister motives and not with a single eye to the general good of the company, it becomes fraudulent, and for that reason void, and might as such be repudiated by the corporators or shareholders.    But nothing of the sort appears in this declaration, nor has there been even an intimation of it on the argument.

Here the declaration makes express reference to these amendatory acts as conferring authority to bring these actions.    Indeed the very act of making this call on less than ninety days' notice, and bringing this action within that time, is a distinct and unequivocal act of user under these amendments of 1857, for only in the provisions of those laws can any authority be found for these acts.    And this brings the case precisely within the case referred to in 1 Greenl., to which might be added, were it necessary, an unlimited number of authorities.

*Judgment reversed.*