HELEN T. GRAHAM, FRANCES N. ANDERSON, LOUISE B. McCARTHY, EDNA F. GELLHORN, BONITA S. RUNDE, MARY E. NARDIN, MARY L. REALS, and LILLIAN A. STEAD, For and In Behalf of All Members of the College Club of St. Louis, St. Louis Branch of the American Association of University Women, Who are or May Be in Similar Status, Plaintiffs-Appellants, v. MARGERY A. KIRCHNER, KATHLEEN L. HAMMOND, and RUTH PLUMMER, on Behalf of All Members of an Organization, Formerly and Now Known as The College Club of St. Louis, Now a Corporation, COLLEGE CLUB OF ST. LOUIS, a Corporation, and MERCANTILE-COMMERCE BANK AND TRUST COMPANY, Now Known as MERCANTILE TRUST COMPANY, a Corporation, Defendants-Respondents, No. 44654—287 S. W. (2d) 830.

Division One, March 12, 1956.

*Hal A. Hamilton* for appellants.

*Fred J. Hoffmeister* and *Paul F. Plummer* for respondents.

[831] WESTHUES, J.—This is a suit in equity to determine title to real estate located at 5428 Delmar Boulevard, in the City of St. Louis, Missouri, and personal property, mostly bonds and cash, of a value in excess of $11,300. The trial court found that plaintiffs had no interest therein and from the decree entered, plaintiffs appealed.

A schism occurred in the College Club of St. Louis, St. Louis Branch of the American Association of University Women, a Missouri corporation. Plaintiffs, representing one of the groups, contend that they are entitled to the property. Defendants contend title to the property to be in the corporation. For a better understanding of the contentions of the parties, we shall relate a history of the events preceding the schism.

In 1899, a national organization known as the Association of Collegiate Alumnae was founded. In 1921, its name was changed to American Association of University Women (sometimes called A.A.U.W. for the sake of brevity). In 1901, the College Club of St. Louis was organized. In 1898, the St. Louis Branch of the Association of Collegiate Alumnae came into being. The objectives of these clubs were about the same and, in 1921, the two St. Louis organizations were merged and were granted a charter by a pro forma decree of the Circuit Court of St. Louis under the name of College Club of St. Louis, St. Louis Branch of the American Association of University Women. The purposes of the corporation were that of ''uniting college women for social companionship and for the promotion of educational and other interests beneficial to the community, to promote and foster among its members and others an interest in the sciences, liberal arts and general education and to advance the cause of other civic interests in the community and to render assistance to worthy young women in securing a college or university training.''

In the course of time, the organization accumulated property including a Club House located at 5428 Delmar Boulevard which was used as headquarters, a place for meetings, lectures, other educational and social activities of the club. There were also several bedrooms rented to club members who lived at the club.

In carrying out its educational and philanthropic purposes, the club was governed by By-Laws. Included therein were requirements for membership which, in substance, provided that an application for membership was examined by a committee and if an applicant was found to be eligible, she was admitted to membership subject to the further approval of the national organization.

The organization seems to have functioned smoothly until 1949 by which time the club had ''spent approximately $65,900.00 on Freshman Scholarships and on loans to girls after the Freshman year, and * * * made college possible for 226 girls.'' In 1949, the local

Branch was notified of a proposed change in the By-Laws of the national organization and that its adoption or rejection would be determined at a national convention to be held in June, 1949, at Seattle, Washington. The proposed by-law which was adopted at the national convention above-mentioned provided in substance that a woman holding an approved degree from an approved institution should be entitled to membership in the Association on presentation of her proper credentials and on payment of dues. The by-law concluded with this provision: "The provisions set forth in this section [832] are the sole requirements of eligibility and admissibility for membership both in the national Association and in a branch." This was a radical change in the procedure. The local by-laws provided the basis of the practice long followed, that is, that the local club reserved the right to approve or reject an applicant for membership. To establish this practice, the St. Louis Branch, in December, 1933, adopted the following resolution: "RESOLVED, that it be the policy of this club that the name of each person applying for membership in the club shall be proposed by some club member, and that the names of applicants, after being passed by the Membership Committee, be brought before the Board of Managers for approval."

It is apparent that the amendment of the By-Laws of the national organization presented a conflict with the By-Laws of the St. Louis Branch.

The A.A.U.W. held national conventions biennially. The St. Louis Branch was entitled to representation at the national convention through delegates. Lillian A. Stead, the President of the St. Louis Branch, and Lillian Stupp were sent to the national convention in June, 1949, as delegates. Prior to the time of this convention, the proposed change in the By-Laws of A.A.U.W. was the subject of much discussion and the club submitted to its members for a vote the question of whether the club delegates should be instructed to vote for or against the proposed amendment. This vote resulted in 101 votes against the amendment and 76 approving it. The delegates obeying the instructions voted against the amendment. Nevertheless, the proposed change was adopted. This created quite a serious problem for the St. Louis Branch. To continue to be affiliated with the national organization, it was obligated to conform to the By-Laws of the national organization. Many members of the St. Louis Branch did not want to surrender the right to control the admission of new members. After much discussion at meetings of the club, it was decided to submit to the membership the question of whether the club should terminate its affiliation with the national organization. It was agreed that the majority of those voting would decide the issue. The form of the ballot submitting the question was as follows:

"1. I vote that the College Club of St. Louis, St. Louis Branch

of the A.A.U.W., remain a branch of the American Association of University Women.

"2. I vote that this organization, the College Club of St. Louis, St. Louis Branch of the A.A.U.W., terminate its affiliation with the American Association of University Women and take the necessary legal action to amend its charter in order to effectuate fully its change of name."

Of the 385 members eligible to vote, 319 votes were cast, showing 131 voting to remain with the Association and 188 voting to withdraw. One of the plaintiffs here, Lillian A. Stead, as President of the St. Louis Branch, notified the national organization of the action taken by the vote and that the local Branch was withdrawing from national. This occurred on October 11, 1949.

Many of the members of the club refused to abide by the action of the majority and withdrew from the local club or did not thereafter pay dues to it. The officers and board of directors of the then St. Louis Branch resigned at a meeting, the resignations to be effective when a new board was elected. On October 22, 1949, a petition was filed by the defendant corporation in the Circuit Court of the City of St. Louis, Missouri, asking that the name be changed from the College Club of St. Louis, St. Louis Branch of American Association of University Women to the College Club of St. Louis. The court appointed an amicus curiae to determine the advisability of granting the request. Many of the group that wanted to remain with the national organization, including all named plaintiffs in this suit, on behalf of themselves and one hundred and fifty others, filed objections to the proposed change in name. After a hearing, [833] the amicus curiae reported to the court recommending that the name be changed. The trial court entered a decree accordingly and no appeal was taken from that judgment.

The group which contested the change in the name of the corporation was composed of the plaintiffs in the present suit. Ever since the withdrawal of the club from the national organization, the property of the corporation, including the house, bonds, and cash, has been under the control and possession of the defendant corporation and its officers. Plaintiffs and the group represented by them have continued their membership in the national Association. This is permissible under the A.A.U.W. By-Laws which provide:

"Article III Membership and Dues

"Section 1. Composition.—The membership of the Association shall consist of individual and corporate members. The Association is an association of members which functions through regional, state, and branch divisions. It is not a federation of local groups."

It is the contention of plaintiffs that their group remained loyal to the national organization and that they and not the defendants

or the defendant corporation are entitled to the property of the club. That presents the principal question for our decision.

■ In the first point briefed, plaintiffs claim that they are not bound by the action of the trial court in the case wherein the court changed the name of the corporation. They say that title to the property was not directly in issue in that case. Title to the property was not involved or adjudicated in that case. 50 C.J.S. 232, Sec. 735. However, many questions were adjudicated in that case which are binding on plaintiffs in this case. Plaintiffs by their objections made in the suit for change of name of the corporation questioned the authority of the President and other officers to act on behalf of the corporation in filing the suit; they questioned the legality of the proceedings of the corporation which resulted in the election of those officers; they questioned the right of the corporation to change its name and the legality of the proceedings authorizing the change. These questions were adjudicated in that case and are binding on plaintiffs in this case. The questions were proper questions to be determined and must be considered res judicata in this case. 50 C.J.S. 206, Sec. 721.

■ In the second point briefed, plaintiffs say that "The by-laws of a club constitute a contract between the club and its members, and the by-laws are of as great a weight as the charter of the corporation in determining whether procedures of the club have been proper." If by that assignment plaintiffs seek to question the legality of the procedures of the club by which the board of directors and the officers resigned and a new board and officers were elected in the fall of 1949, our answer must be that the legality of that procedure was determined in the former case when the name of the corporation was changed.

■ The plaintiffs in this case participated in all of the proceedings which resulted in the withdrawal of the club from the national organization and the resignation of the board and officers of the corporation. They now say in point three of their brief that "No estoppel arises where one may have concurred in or even aided in the commission of a wrong and who later takes an opposite position and seeks to right that wrong." One case is cited as authority for that statement, Kuhl v. Meyer, 42 Mo. App. 474. In that case, a majority of the members of an unincorporated society attempted to divert the funds of the society and to distribute them among the members. That action was contrary to the purposes for which the funds were held under the constitution of the society. The action was held to be illegal and void. The case does not help plaintiffs. The actions of the defendant corporation in [834] withdrawing from the national organization and in changing its name cannot be held to be illegal. The funds of the corporation were never diverted from the purposes for which they were held. The College Club of St.

Louis continued the educational and philanthropic activities in the same manner as it had prior to the change of name. It is true that after withdrawing from the national organization, it no longer had a voice in the national Association. That was true of the College Club of St. Louis prior to the merger in 1921. The activities of the club were then the same as now and also the same as during the period when it was a branch of the national organization. The point must be ruled against plaintiffs.

In point four, plaintiffs say that "Where rights and remedies within an organization have been exhausted, a member or members thereof may resort to the Courts for redress." Plaintiffs have not been denied an opportunity to litigate their grievances in court. They actively participated in the suit for a change of name of the corporation. They now are litigating the question of the ownership of the property. It is evident, therefore, that plaintiffs' point is without merit.

The final point briefed, reads as follows: "Neither a minority nor even a majority of the members of an organization can by their actions take possession of the property of that organization and divert it from the purpose for which it was acquired and to which it was devoted, and that faction remaining loyal to the general organization is entitled to the use and enjoyment of the organization's property." In that statement, it is assumed that the property in question was diverted from the purposes for which it was acquired and to which it was devoted. The evidence as above-indicated showed the contrary to be true. Plaintiffs contend that the By-Laws of the national Association do not provide for the withdrawal of a branch. The By-Laws are silent on this question. However, the By-Laws of the national organization do provide that in case a branch refuses to abide by the By-Laws of national, it forfeits its membership. Note what the A.A.U.W. By-Laws provide: "A branch shall be deemed to have forfeited its right to continue as a branch for any of the following reasons: If * * * a branch * * *, or has maintained branch by-laws or practices in conflict with the national Charter and By-Laws; * * *."

By withdrawing its membership as a branch, the defendant corporation is in the same position as if it had waited to be (and had been) ousted by national. The only effect of such forfeiture of the branch would be that the defendant corporation would no longer be affiliated with national. The property of the corporation would not thereby be transferred to national nor to any group that might agree to withdraw its membership from the corporation branch and retain membership in national.

The theory of plaintiffs was stated at the trial of this case as follows: "* * * it is our contention that, when you boil it right down, it is the members themselves that own the property; the majority cannot deprive the minority of their property, as long as they operate as

814

a continuing branch of the National Association—and, there are various cases so holding." That statement is not a correct declaration of the applicable law. It ignores the fact that this is an incorporated club and title to the property is in the corporation and not in the membership. See 14 C.J.S. 1280, 1281, Sec. 4, where the rule is thus stated: "In case of the incorporation of a pre-existing club, the corporation generally succeeds to its property." A member of an incorporated club like the defendant in this case does not have any title to any of the property. In case a member resigns or for any other reason ceases to be a member, all rights of the member are terminated.

It is evident that the trial court ruled correctly in holding that the title to the property in question is vested in the defendant corporation. The judgment is affirmed. All concur.