**G. I. McDANIEL et al., Plaintiffs,**

**v.**

**FRISCO EMPLOYES' HOSPITAL ASSOCIATION, and C. D. Ross, et al., Defendants.**

**No. 35017.**

Missouri Court of Appeals, St. Louis District, Division Two.

April 9, 1974.

Motion for Rehearing or Transfer Denied

May 14, 1974.

Application to Transfer Denied July 22, 1974.

———◆———

C. Dudley Martin, Springfield, Edward L. Dowd, Francis M. Oates, St. Louis, for plaintiffs-appellants.

George E. Bailey, Gerald D. Morris, St. Louis, for defendants-respondents.

McMILLIAN, Judge.

This is an appeal by plaintiffs, members of the Frisco Employes' Hospital Associa-

tion, a non-profit corporation, from a judgment of dismissal entered by the Circuit Court of the City of St. Louis, Missouri, in favor of defendants, members of the board of trustees of the Association. Plaintiffs' cause of action challenged a series of actions by the trustees designed to lead to the ultimate dissolution of the Association. For reasons stated herein, we reverse the judgment of the Circuit Court.

The Frisco Employes' Hospital Association (herein, "Hospital Association") was incorporated in St. Louis, Missouri, by *pro forma* decree in 1898 under what is now Section 352.180, RSMo 1969, V.A.M.S. Its Articles of Incorporation declared its object to provide medical and surgical treatment for the employees of the St. Louis and San Francisco Railroad Company and its associated companies. In furtherance of that purpose, trustees were appointed to manage the affairs of the Hospital Association and were empowered to provide a hospital and otherwise deal with any property the corporation acquired.[1]

Under Chapter 352 the right to vote on voluntary dissolution of the Association was expressly conferred on the members.[2] The Bylaws did not provide for any meeting of the membership which totaled, at the time this suit was filed, at least 10,000 persons, including both active and retired employees.

In September of 1966 the Board of Trustees adopted a Resolution to submit a letter ballot to the membership. The issue was whether or not the Association should

---

1. Article II of the Articles of Association:
" 'To provide medical and surgical treatment and care for the employes of the St. Louis and San Francisco Railroad Company, and of its associated companies . . . to such extent only and under such rules and regulations as may be prescribed from time to time by the Trustees . . . and to that end purchase, acquire, erect and maintain, suitable buildings, with necessary land and appurtenances for hospital, and other purposes within the purview of these articles; and to sell, convey, encumber and transfer any such property whenever said Trustees shall direct.' "

2. "Whenever seventy-five per cent of all the members of any benevolent, religious, scientific or other miscellaneous associations, incorporated under this chapter, by their record vote at any lawful meeting of such association adopt a resolution favoring the dissolution of such association, after the payment of all debts, claims, or other obligations of said association, then said association may be dissolved by filing an affidavit of dissolution with the secretary of state, setting forth the above facts, and when said affidavit of dissolution is filed, it shall be taken as prima facie evidence of such voluntary dissolution."
§ 352.180.

discontinue its medical, surgical, and hospital services to its members, to be effective on a date fixed by the Board. In addition, the ballot provided that the members' obligation to pay dues, which was the condition of membership, would cease on that date. Further, no new members would be admitted, but those already members would retain their status until dissolution of the Association was completed. On November 30, 1966, the balloting done, of over 7,000 members voting, only 2,684 affirmed the Board's proposition.

Notwithstanding the results of the letter ballot, in October of the following year, the Board adopted a Resolution that the Association discontinue providing services effective January 1, 1968, or as soon thereafter as arrangements could be made for coverage of Association members under' other plans, but no later than April 1, 1968. A second Resolution was also passed at that time directing the officers of the Association to take necessary steps to cause the corporation to accept the provisions of now Section 355.020, RSMo 1969, V.A.M.S. Articles of Acceptance were duly executed, the St. Louis Circuit Court approved them, and on November 13, 1967, the Secretary of State issued a Certificate of Acceptance.

After December of 1967, none of the above-mentioned services were furnished. In May of 1968, the corporation's principal asset, the St. Louis Hospital, was sold. In September of 1969, the Board resolved to dissolve the Association and adopted and filed with the Attorney General a plan of distribution of the net assets which totaled some six hundred thousand dollars. The plan provided for equal sharing among the members and a distribution of fifty dollars. per member was made in November of 1969 amounting to $484,182.00. Dissolution was not effected at the time this suit was filed in November, 1969 or when it was tried in April, 1972.

The parties allege numerous grounds for reversal or affirmance of the Circuit Court. Plaintiffs urge that the court erred in denying them relief as a matter of law on the grounds that:

(1) the Trustees violated the charter and, hence, breached their duty under it by terminating the medical and surgical services to the members of the Association without their consent;

(2) the Trustees wrongfully rejected the provisions of Chapter 352 in favor of accepting Chapter 355 and thereby deprived the membership of the right to vote on the ultimate dissolution of the Association; and

(3) plaintiffs acted for the benefit of the corporation and all its members and so were entitled to costs and attorneys' fees.

On the other hand, Hospital Association argues that:

(1) the Trustees properly discontinued service;

(2) properly adopted the provisions of Chapter 355;

(3) costs and attorneys' fees were properly denied because plaintiffs' suit was unsuccessful and failed to benefit the class;

(4) there was no true class suit;

(5) plaintiffs were estopped to bring the suit by accepting the distribution checks; and

(6) plaintiffs were guilty of laches.

■ The Hospital Association's affirmative defenses (4), (5) and (6) are without merit. As plaintiffs countered and the court below concluded, plaintiffs were representative of the members of the Association and were in a position to fairly and adequately defend the interests of the class. Plaintiffs themselves were members of the Association which consisted of employees of the Frisco Railroad and of all subsidiary companies. Moreover, the letter

ballot indicated the sentiment of a majority of the membership that the Association continue in existence and continue furnishing health services.

■ Application of the doctrine of estoppel is not germane here. An essential element is lacking—detrimental reliance induced in the party asserting the defense. Nor can the companion principle of ratification be resorted to in order to bar the members' rights. The trustees failed to meet their burden of proof showing that the members had knowledge of all material facts whereby they ratified the unauthorized acts of the Board. B & H Warehouse, Inc. v. Atlas Van Lines, Inc., 348 F.Supp. 517 (1972), applying Delaware law. Indeed, it is arguable that such acts could not have been ratified where they were void by statute or against public policy or strictly *ultra vires*. 2 Fletcher, Cyclopedia Corp. (Perm.Ed., 1973 Supp.) §§ 764, 780; Whitehead v. Farmers' Fire & Lightning Mut. Ins. Co., 227 Mo.App. 891, 60 S.W.2d 65, 71 (1933); Westlake Hosp. Ass'n v. Blix, 13 Ill.2d 183, 148 N.E.2d 471 (Ill.App.1958), cited in Kern v. Chicago & Eastern R. Co., 31 Ill.App.2d 300, 175 N.E.2d 408, 413 (1961), aff'd 44 Ill.App.2d 468, 195 N.E.2d 197 (1963).

■ Laches, another equitable principle, contemplates more than mere lapse of time. The doctrine may be invoked where the corporation (or, here the Trustees as agents for the corporation) is injured by unreasonable delay with knowledge of the material facts in bringing suit or in diligently prosecuting it. The membership of a corporation, especially where, in this case, no meetings are provided for in the Bylaws, is not held to know corporate affairs, 18 C.J.S. Corporations § 487; American Well & Pros. Co. v. Blakemore, 184 Cal. 343, 193 P. 779, 785 (1920); and we cannot say that these plaintiffs sat on their rights and have consequently lost them.

Plaintiffs first contend that the Board of Trustees violated the Association's charter and breached their collective duty under it by terminating services to the members without their consent. Did the membership have a right to continue receiving these services? We must answer affirmatively.

As noted above, the purpose for which this corporation was created, as provided in its charter, was to provide medical, surgical, hospital care, and treatment for member employees of the Frisco Railroad and its subsidiaries.

■ Members in both a stock, as well as a non-stock corporation are possessed of rights inherent in and as incidents of their membership. In this case the members were possessed of a valuable contract right to the health care services and a protectable interest in the corporate property, to wit, use and enjoyment thereof. Peters v. United States Mortgage Co., 13 Del.Ch. 11, 114 A. 598 (1921), cited in Voege v. Am. Sumatra Tobacco Corp., 241 F.Supp. 369, 373–374 (1965), applying Delaware law; Whitehead, supra, p. 71; Graham v. Kirchner, 365 Mo. 806, 287 S.W.2d 830 (1956). See also Gidwitz vs. Lanzit Corrugated Box Co., 20 Ill.2d 208, 170 N.E.2d 131, 135 (1960). We would not go so far as some Illinois cases as to hold that members of a non-profit corporation have the benefit of absolutely no constitutional protection of any right to vote, *Westlake,* supra, especially where such right is conferred by valid statute. The Illinois cases, however, seem to restrict application of the rule to situations such as the question of the right to vote on trustees or on purely management decisions, which restrictions Missouri likewise recognizes.

There is even authority for the proposition that distinct from the traditional contract between the corporation and its members arising by virtue of the charter and bylaws, a second contract exists. In a non-stock or mutual benefit corporation, a second contract may be said to arise between the corporation as insurer and member as insured. This corollary relation oc-

curs when the members actually sign the constitution or bylaws, *or* when the application for membership is duly accepted and a policy or certificate or document containing the agreed benefits is issued, or merely by conduct, such as the receipt and retention of membership fees. Purdy v. Bankers' Life Ass'n, 74 S.W. 487 (Mo.App. 1903); 8 Fletcher, supra, § 4198, 12a Fletcher, supra, § 5690.

These rights are enforceable in appropriate circumstances. Particularly in the case of an *ultra vires* exercise of power, an action lies where there has been a breach of trust (or, in the case of fraud), 18 C.J.S. Corporations § 520. The Trustees' actions are voidable. 6a Fletcher, supra, § 2936; Texas Co. v. Z. & M. Independent Oil Co., 66 F.Supp. 957 (N.Y. 1945), aff'd 2 Cir., 156 F.2d 862 (1946). And the test for an effective challenge by the membership, according to the modern trend, is the best interests of the members and the justification for the sale; a just and reasonable cause for the sale; absence of fraud, misconduct, or overreaching; adequate compensation paid; consistency with the charter and applicable statutes. Sherrard State Bank v. Vernon, 243 Ill. App. 122, cited in Levin v. Hunter, 6 Ill. App.2d 461, 128 N.E.2d 630 (1955); Johnson v. Hotel Lawrence Corp., 337 Ill. 345, 169 N.E. 240 (1929); Baron v. Pressed Metals of America, 35 Del.Ch. 581, 123 A. 2d 848 (1956); Epstein v. Celotex Corp., 238 A.2d 843 (Del.Ch.1968). This prohibition is designed to protect the membership from fundamental change or destruction of the means for accomplishing the purposes of incorporation, Flarsheim v. 2532 Broadway Corp., 432 S.W.2d 245, 251 (Mo. 1968); Beaufort Transfer Co. v. Fischer Trucking Co., 451 S.W.2d 40 (Mo.1970).

In furtherance of the corporate object and pursuant to its powers, the first asset acquired by the Association was the St. Louis Hospital complete with facilities and staff, with emergency care arranged with other hospitals in cities along the line. It is well-settled that trustees, charged exclusively with the management of the business and affairs of a corporation, may lease or transfer corporate property in the ordinary course of the business and in furtherance of the corporate purpose, as purely incidental and subordinate to that purpose. They exceed their authority when their acts are not consistent with that purpose *or* removed from the ordinary course of business *or* when the transfer is of all or substantially all of the corporate property *or* when the transfer effectively terminates the business of the corporation or virtually ends its existence and the object for which it was created. Ballantine on Corporations (1946), § 273; 2 Fletcher, supra, § 546; 6a Fletcher, § 2925; General Conference of Free Baptists v. Berkey, 156 Cal. 466, 105 P. 411, 412 (1909); Pacific Home v. County of Los Angeles, 256 P.2d 36 (Cal.App.1953).

There are three exceptions—such a transfer may be made (1) when there is an express grant in the charter, or by an applicable statute; (2) when authorized by a majority vote or the written consent of the members, when the latter have such power; and (3) even without consent of the members, of imperative necessity when the corporation or business is failing or insolvent and there is no reasonable prospect of successfully continuing. Ballantine, supra, § 281; 2 Fletcher, supra, § 545–6; 6a Fletcher, supra, § 2949.5; 13 Fletcher, supra, § 5718–20; Exchange Bank v. Turner, 321 Mo. 1104, 14 S.W.2d 425, 430 (1929); Candor v. Mercer County State Bank, 257 Ill.App. 192, 197 (1930); Oskaloosa Sav. Bank v. Mahaska County State Bank, 205 Iowa 1351, 219 N.W. 530 (1928); 60 ALR 1204, et seq. (1928). Many statutes, including the Model Act,[3] are in accord.

The actions of defendant trustees qualify for none of the exceptions. No express grant conferred such power on

---

3. Model Non-Profit Corp. Act, §§ 2f, 15, 25, 44–62 (___).

them. It has been held that notwithstanding language such as the instant charter employed, "All of the powers of the Association . . . vested in and exercised by . . . Trustees . . .," still only those powers of management ordinarily reposed in directors or trustees are conferred. *Pacific Home,* supra; 2 Fletcher, supra, § 540. Moreover, contrary to defendants' contention that they were motivated by imperative necessity and the financial distress of the Association, the record reflects no evidence to that effect.

Trustees, especially in circumstances involving disposing of corporate assets or dissolution, are to be held to a standard of scrupulous good faith in the fiduciary role as guardians of the corporate welfare. We hold that that duty was strained here to a violation of trust. We hold further that by virtue of their contract of membership with the Association based upon the charter, bylaws, applicable statutes, and the payment and retention of dues, the Association membership had a valuable right to the continued availability of medical, surgical and hospital care and treatment as long as they remained members and the Association lawfully remained in existence.

Plaintiffs next contend that, in a continuing breach of trust, the Trustees wrongfully accepted the provisions of Chapter 355 and thereby deprived the membership of the right to vote on the ultimate dissolution of the Association.

■ Chapter 352 distinctly conferred on the membership the right to vote on voluntary dissolution, requiring consent of seventy-five percent. § 352.180, RSMo 1969, V.A.M.S. Those statutes comprise part of the charter which are in existence and applicable at the time of incorporation. Only such later laws apply retrospectively when the legislature expresses its intent and has reserved such power to alter, repeal, or amend in the statute under which the corporation was organized or in the state constitution subject, however, to Federal constitutional prohibition against the impairment of contracts, Art. I, § 10; or when the corporation lawfully consents.

The earlier and later statutes are then to be read together, 18 C.J.S. Corporations §§ 28, 80; State v. Holekamp Lumber Co., 331 S.W.2d 171, 179 (Mo.1960); State v. Holekamp Lumber Co., 340 S.W.2d 678, 683 (Mo.1960); 54 Harvard Law Review 1368, 1370 (1941); 7 Fletcher, supra, § 3734; 16a Fletcher, supra, § 8022-3.

Chapter 355 provided for incorporation of non-profit corporations *ab initio* or for existing Chapter 352 corporations to voluntarily adopt its provisions by accepting, as an amendment to the original articles of corporation. Amendment under Chapter 352 was generally authorized where "germane to the charter," § 352.070, RSMo 1969, V.A.M.S.

The distinction out of which the controversy emerges is that Chapter 355 authorized (1) the change over from 352 to be made by "members with voting rights, if any," and (2) voluntary dissolution by two-thirds of "members with voting rights"; otherwise, by a majority vote of the directors. §§ 355.020, 355.225 RSMo 1969, V.A.M.S.

If "voting rights" are any express or implied grant of the right to vote by law or the charter, and none such rights are found here, then the court will not interfere in the Trustees' decision if that decision, consistent with the rules stated above, was made in good faith and in the course of managing the business of the Association, and did not constitute a fundamental change from the corporate object. Hope Mut. Fire Ins. Co. v. Beckmann, 47 Mo. 93 (1870); Illinois River R. Co. v. Zimmer, 20 Ill. 654 (1858); Lewis v. West Side Trust & Sav. Bank, 376 Ill. 23, 32 N.E.2d 907, 918 (1941), cited in Cooper v. Brogni, 50 Ill.App.2d 70, 199 N.E.2d 619, 623 (1964).

Indeed, it is arguable that no fundamental change here occurred. However, this court is not to be myopic in its scrutiny of

the facts. The totality of circumstances reveals the issue to be whether or not directors or trustees may do by indirection what they may not do directly. Certainly, they may not so undermine their legal responsibility as fiduciaries.

Chapter 352 bestowed on the membership voting rights upon dissolution. The Trustees, merely because they *might* lawfully amend the Articles and accept Chapter 355, would have us read Chapter 355 so that dissolution lay solely in their hands even where, admittedly, their ulterior motive was to utilize 355's procedures to effect dissolution and override the wishes of the Association's membership. This result is prohibited. Lenit v. Powers, 120 Ill.App.2d 411, 257 N.E.2d 142, 147 (1970); Zimmer, supra; Topkis v. Delaware Hardware Co., 23 Del.Ch. 125, 2 A.2d 114 (1938). The act itself is replete with reminders that it is in no way to adversely affect any corporation organized, including any existing rights or obligations, under Chapter 352 not choosing to accept its provisions.

 We hold, therefore, that the Trustees' actions in amending the charter to accept Chapter 355 and in proceeding to dissolve the Association, without any showing of good cause and not made in good faith, was a breach of trust, wrongful, and highly improper.

Lastly, plaintiffs argue that they are entitled to costs and counsel fees for the reasons that their efforts were for the benefit of the corporation and all its members. We agree. German Evangelical St. Marcus Cong. v. Archambault, 404 S.W.2d 705 (Mo.1966).

Cases were cited by the parties which are distinguishable on the facts and are not persuasive of a different result than we reach. Accordingly, we reverse the judgment of the trial court and the case to be remanded to the trial court with directions to: Declare the acceptance of Chapter 355, RSMo 1969, V.A.M.S., by the defendants void; declare the purported dissolution of the Association void; issue its order to the Association and its trustees to refrain from taking further action to dissolve the Association unless the Chapter 352, RSMo 1969, V.A.M.S., is complied with; order the defendants and the Association to provide medical, hospital and surgical services to the members of the Hospital Association; and determine the costs of this action and a reasonable attorney's fee for plaintiffs' attorneys, and to order the Association and its Trustees to pay such costs and attorney's fees to plaintiffs.

Judgment reversed and remanded with directions not inconsistent with the views expressed herein.

SMITH, P. J., and CLEMENS, J., concur.